IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JAMES I. JONES,                          )
                                         )
                 Plaintiff,              )
                                         )     CIVIL ACTION
v.                                       )
                                         )     No. 06-2124-KHV-JTR
                                         )
MICHAEL J. ASTRUE,[1]                    )
Commissioner of Social Security,         )
                                         )
                 Defendant.              )
_____  )

REPORT AND RECOMMENDATION

Plaintiff seeks review of a final decision of the
Commissioner of Social Security (hereinafter Commissioner)
denying disability insurance benefits and supplemental security
income under sections 216(i), 223, 1602 and 1614(a)(3)(A) of the
Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and
1382c(a)(3)(A)(hereinafter the Act).  The matter has been
referred to this court for a report and recommendation.  The
court recommends the Commissioner's decision be AFFIRMED.

I.   Background

_____

[1]On Feb. 12, 2007, Michael J. Astrue was sworn in as
Commissioner of Social Security.  In accordance with Rule
25(d)(1) of the Federal Rules of Civil Procedure, Mr. Astrue is
substituted for Commissioner Jo Anne B. Barnhart as the
defendant.  In accordance with the last sentence of 42 U.S.C.
§ 405(g), no further action is necessary.

Plaintiff's applications for disability insurance benefits and supplemental security income were denied initially and upon reconsideration, and after a hearing, an Administrative Law Judge (ALJ) filed a decision finding plaintiff not disabled at any relevant time, and denied plaintiff's applications.  (R. 12-28, 47, 48, 349, 350).  The ALJ found that plaintiff has not engaged in substantial gainful activity since the amended onset date, Aug. 1, 2003 (R. 16), and that plaintiff has severe impairments of major depression and diabetes mellitus with neuropathy.  (R. 18).  He determined plaintiff's impairments do not meet or equal the severity of any impairment contained in the Listing of Impairments.  (R. 18-20).

The ALJ considered the evidence, including medical records, medical opinions, and testimony from plaintiff and his sister. (R. 16-26).  He determined that plaintiff's statements and those of his sister regarding the severity of plaintiff's symptoms are not credible.  (R. 22).  The ALJ determined that the opinions of treating physician, Dr. Self, regarding plaintiff's physical limitations were not worthy of either controlling or substantial weight (R. 24-25) "except in regard to standing and walking limitations, which are supported by objective findings showing neurological deficits in the feet."  (R. 25).

The ALJ evaluated two sets of opinions of a psychologist, Dr. Anderson, prepared when Dr. Anderson performed a mental

-2-

status evaluation for the state agency on Feb. 5, 2004 (259-63,
324-28) and when Dr. Anderson completed a mental residual
functional capacity (RFC) assessment on Mar. 29, 2004, shortly
after he began treating plaintiff.  (R. 25, 299-301).  The ALJ
gave substantial weight to the opinions expressed in Dr.
Anderson's mental status evaluation but discounted the opinions
expressed in the mental RFC assessment.  The ALJ considered the
opinions of the state agency medical consultants, and although he
found claimant has additional non-exertional limitations and
additional limitations in the ability to stand and walk, he
adopted the mental RFC assessment completed by the state agency
consultants, finding it was based upon the totality of the
evidence and upon Dr. Anderson's findings and opinions expressed
in his report of mental status evaluation.  (R. 26).

     The ALJ assessed plaintiff with the RFC to lift, carry,
push, or pull ten pounds frequently and twenty pounds
occasionally; to sit up to six hours in a workday; and to stand
or walk up to three hours in a workday, but no longer than
fifteen minutes at a time.  (R. 23).  He found non-exertional
limitations for occasional stair climbing, balancing, stooping,
kneeling, crouching, crawling, and manipulation; and precluding
exposure to extremes of heat or cold, or climbing ropes, ladders,
or scaffolds.  Id.  He found plaintiff is moderately limited in
the abilities to understand, remember, and carry out detailed

instructions, and to maintain attention and concentration for extended periods, but that he is able to perform simple, routine tasks within his physical limitations.  <u>Id.</u>

Based upon the RFC assessed and the testimony of the vocational expert, the ALJ determined plaintiff is not able to perform his past relevant work, but considering his education, age, and past work experience, is able to perform other jobs existing in the economy such as laundry folder, greeter, hand mounter, or electronics technician. (R. 26-27).  Consequently, the ALJ concluded plaintiff is not disabled within the meaning of the Act, and denied his applications. (R. 27, 28).

Plaintiff sought Appeals Council review of the ALJ's decision, and submitted additional evidence to the Council. (R. 11, 355-75).  The Appeals Council accepted the additional evidence and made it a part of the administrative record but, nonetheless, denied plaintiff's request for review. (R. 6-9).  Therefore, the ALJ decision is the final decision of the Commissioner. (R. 6); <u>Threet v. Barnhart</u>, 353 F.3d 1185, 1187 (10th Cir. 2003).  Plaintiff now seeks judicial review.

## II.  Legal Standard

The court's review is guided by the Act.  42 U.S.C. §§ 405(g), 1383(c)(3).  Section 405(g) provides, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court must determine whether

-4-

the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but less than a preponderance, it is such evidence as a reasonable mind might accept to support the conclusion.   Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [it's] judgment for that of the agency." White, 287 F.3d at 905 (quoting Casias v. Sec'y of Health & Human Serv., 933 F.2d 799, 800 (10th Cir. 1991)).  The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.   Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d); see also, Barnhart v. Walton, 535 U.S. 212, 217-22 (2002)(both impairment and inability to work must last twelve months).  The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his

-5-

age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  Id.; 20 C.F.R. §§ 404.1520, 416.920 (2004).

The Commissioner has established a five-step sequential process to evaluate whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004); Ray, 865 F.2d at 224.  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has severe impairments, and whether the severity of his impairments meets or equals the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Id. at 750-51.  If claimant's impairments do not meet or equal the severity of a listed impairment, the Commissioner assesses claimant's RFC.  20 C.F.R. §§ 404.1520, 416.920.  This assessment is used at both step four and step five of the process.  Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five, whether the claimant can perform his past relevant work, and whether he is able to perform other work in the economy.  Williams, 844 F.2d at 751.  In steps one through four the burden is on claimant to prove a disability that

-6-

prevents performance of past relevant work.  Dikeman v. Halter,
245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751
n.2.  At step five, the burden shifts to the Commissioner to show
other jobs in the economy within plaintiff's capacity.  Id.;
Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ failed to apply the correct legal
standard in assessing plaintiff's RFC because he failed to
consider the functional limitations caused by plaintiff's mental
impairments, failed to properly evaluate the medical opinions of
his treating physicians, Drs. Self and Anderson, and failed to
properly evaluate the credibility of plaintiff's subjective
complaints.  Plaintiff also claims the hypothetical question
posed to the vocational expert is erroneous because it failed to
include the limitations established by "Jones's treating
physician."[2]  (Pl. Br., 27).  The Commissioner argues the ALJ
properly evaluated the opinions of treating physician, Dr. Self,
and examining psychologist, Dr. Anderson, and the ALJ's
hypothetical question is supported by substantial evidence in the
record.  The court addresses each claim.

---

[2]The court notes that plaintiff cites to Eighth Circuit law
exclusively in his arguments regarding hypothetical questioning.
(Pl. Br., 26-27).  Eighth Circuit law is not binding and will be
used only for its persuasive value where the Tenth Circuit has
spoken to the issue presented.  E.g., Barnett v. Apfel, 231 F.3d
687, 690 (10th Cir. 2000); Qualls v. Apfel, 206 F.3d 1368, 1373
(10th Cir. 2000); Gay v. Sullivan, 986 F.2d 1336, 1341 (10th Cir.
1993); Jordan v. Heckler, 835 F.2d 1314, 1316 (10th Cir. 1987).

**III. RFC Assessment**

The Commissioner has promulgated regulations regarding assessment of RFC.  20 C.F.R. §§ 404.1545-1546, 416.945-946 (2004).  In assessing RFC, the Commissioner is to consider a claimant's abilities to meet the demands of work despite his impairment(s).  Id. at §§ 404.1545(a), 416.945(a).  The assessment is to be based upon all relevant evidence in the record and is to include consideration of the limitations caused by all of the claimant's impairments, including impairments which are not "severe" as defined in the regulations.  Id. at §§ 404.1545, 416.945.  The assessment is to consider physical abilities such as sitting, standing, walking, lifting, carrying, pushing, pulling, reaching, handling, stooping, and crouching; mental abilities such as understanding, remembering, and carrying out instructions; other abilities such as hearing and seeing; and the ability to tolerate various work environments.  Id.; see also §§ 404.1521, 416.921 (listing examples of basic work activities which may be affected by impairments).

The Commissioner has promulgated a Psychiatric Review Technique for evaluating mental impairments in a disability case. Id. §§ 404.1520a, 416.920a .  The regulations provide that "[a] limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-

-8-

workers, and work pressures in a work setting, may reduce [a claimant's] ability to do [work.]"  Id. §§ 404.1545(c), 416.945(c).

The Commissioner issued Soc. Sec. Ruling (SSR) 96-8p "[t]o state the Social Security Administration's policies and policy interpretations regarding the assessment of residual functional capacity (RFC) in initial claims for disability benefits." West's Soc. Sec. Reporting Serv., Rulings 143 (Supp. 2006).  RFC must be expressed in terms of work-related functions.  Id. at 148.  In accordance with the regulations, SSR 96-8p states "Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting."  Id. at 149.

The ruling includes narrative discussion requirements of the ALJ's written decision when making an RFC assessment.  Id. at 149.  The discussion is to cite specific medical facts to describe how the evidence supports each conclusion, discuss how the plaintiff is able to perform sustained work activities, and describe the maximum amount of each work activity the plaintiff can perform.  Id.  The discussion must include an explanation how any ambiguities and material inconsistencies in the evidence were

considered and resolved.  Id.  It must include consideration of the credibility of plaintiff's allegations of symptoms and consideration of medical opinions regarding plaintiff's capabilities.  Id. at 149-50.  If the ALJ's RFC assessment conflicts with a medical source opinion, the ALJ must explain why he did not adopt the opinion.  Id. at 150.

Plaintiff makes three specific arguments of error in the ALJ's RFC assessment.  He claims the ALJ failed to consider the functional limitations caused by plaintiff's mental impairments, failed to properly evaluate the medical opinions of plaintiff's treating physicians, Drs. Self and Anderson, and failed to properly evaluate the credibility of plaintiff's subjective complaints.  Because a proper evaluation of plaintiff's mental impairments is dependent upon proper evaluation of the medical opinions and the credibility of plaintiff's allegations, the court will consider the argument regarding mental impairments after considering the ALJ's evaluation of the medical opinions and of plaintiff's credibility.

**A.   Evaluation of Medical Opinions**

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis."  20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  Such

opinions may not be ignored and, unless a treating source opinion is given controlling weight, will be evaluated by the Commissioner in accordance with factors contained in the regulations.  Id. §§ 404.1527(d), 416.927(d); SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2006).  A physician who has treated a patient frequently over an extended period of time is expected to have greater insight into the patient's medical condition.  Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003).  But, "the opinion of an examining physician who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion."  Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)).  However, opinions of examining physicians are generally given more weight than the opinions of physicians who have merely reviewed the medical record.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) [(1)] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and

[(2)] is not inconsistent with the other substantial evidence in [claimant's] case record, [the Commissioner] will give it controlling weight."  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); <u>see also</u>, SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2006).

The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion.  <u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300-01 (10th Cir. 2003).  The ALJ determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'"  <u>Id.</u> at 1300 (quoting SSR 96-2p).  If the opinion is well-supported, the ALJ must determine whether it is consistent with the other substantial evidence in the record.  <u>Id.</u> (citing SSR 96-2p). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."  <u>Id.</u>

If the treating source opinion is not given controlling weight, the inquiry does not end.  <u>Id.</u>  A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927."  <u>Id.</u> Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence;

(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon
which an opinion is rendered; and (6) other factors brought to
the ALJ's attention which tend to support or contradict the
opinion.  Id. at 1301; 20 C.F.R. §§ 404.1527(d)(2-6),
416.927(d)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211,
1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human
Serv., 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the factors, the ALJ must give reasons in
the decision for the weight he gives the treating source opinion.
Id. 350 F.3d at 1301.  "Finally, if the ALJ rejects the opinion
completely, he must then give 'specific, legitimate reasons' for
doing so."  Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th
Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir.
1987)).

Here, the ALJ discussed and considered the medical opinions
of Dr. Self, Dr. Anderson, and the state agency medical
consultants.  (R. 16-17, 20-26).

## 1.  Dr. Self's Opinion

The ALJ acknowledged that Dr. Self is a treating physician,
determined not to give Dr. Self's opinion controlling weight, and
further determined not to give the opinion substantial weight
"except in regard to standing and walking limitations, which are
supported by objective findings showing neurological deficits in

the feet." (R. 25). He stated numerous reasons for giving Dr.
Self's opinion limited weight, explaining that Dr. Self
specifically noted no objective signs of pain in plaintiff's
arms, legs, or back, and that plaintiff had never exhibited any
signs of being in pain and never had difficulty in walking in or
out of Dr. Self's examining room, or in sitting or standing. (R.
24)(citing Ex. 13F/160(R. 310)). He noted that Dr. Self's
opinion was inconsistent with plaintiff's statements to Dr.
Anderson and with Dr. Anderson's reports. (R. 24). He explained
that Dr. Self's opinion was inconsistent with Dr. Self's findings
of full strength in plaintiff's upper extremities, and
inconsistent with plaintiff's reported activities and testimony
at the hearing. (R. 25).

Plaintiff claims the ALJ may not "pick and choose" portions
of Dr. Self's medical opinion which are favorable to the ALJ's
decision, and thereby implies that the ALJ ignored portions of
Dr. Self's opinion which are contrary to the decision. (Pl. Br.,
24)(citing Hamlin v. Barnhart, 365 F.3d 1208, 1215, 1219 (10th
Cir. 2004); Sitsler v. Barnhart, No. 05-5197, 2006 WL 1495023, at
*4 (10th Cir. Jun. 1, 2006); Drapeau v. Massanari, 255 F.3d 1211,
1214 (10th Cir. 2001). As plaintiff's argument implies, it is
error for an ALJ to ignore the evidence as a whole while choosing
instead to abstract pieces of evidence favorable to his decision.
O'Connor v. Shalala, 873 F. Supp. 1482, 1491 (D. Kan. 1995);

Jones v. Sullivan, 804 F. Supp. 1398, 1406 (D. Kan. 1992);
Claassen v. Heckler, 600 F. Supp. 1507, 1511 (D. Kan. 1985).
That is not what happened in this case.  In making his decision,
an ALJ must consider all the evidence, and discuss the evidence
supporting his decision, the uncontroverted evidence upon which
he chooses not to rely, and significantly probative evidence he
rejects.  Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir.
1996) (citing Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th
Cir. 1984)).  He may not, however, selectively abstract evidence
in support of his decision and ignore evidence supportive of
plaintiff's allegations.  Owen v. Chater, 913 F. Supp. 1413, 1420
(D. Kan. 1995).

　　　Plaintiff points to no portion of Dr. Self's opinion which
was ignored by the ALJ.  It is not error for an ALJ to credit a
portion of a medical opinion and discount other portions of the
opinion.  Weighing the evidence is precisely the duty of the ALJ.
White, 287 F.3d at 905; Casias, 933 F.2d at 800.  The cases cited
by plaintiff do not require a different result.  As plaintiff
quotes in his brief, the court in Hamlin found error where the
ALJ picked and chose "aspects of an uncontradicted medical
opinion" favorable to his decision.  Hamlin, 365 F.3d at
1219(emphasis added).  The Hamlin court recognized that in
discounting a treating physician's opinion an ALJ must provide
"reasons that are 'sufficiently specific to make clear . . . the

weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Id. at 1215 (citing SSR 96-2p).  In Sitsler, the court found error where the ALJ failed to explain why he rejected a physician's opinion. Finally, in Drepeau the court found error where the ALJ did not "provide any explanation for rejecting medical evidence." Drapeau, 255 F.3d at 1214.  Here, the ALJ explained why he discounted most of Dr. Self's opinion and why he accepted a portion of that opinion, and supported his explanation with evidence in the record.  The ALJ's reasons are sufficient to allow for judicial review and are supported by substantial evidence in the record.

Plaintiff also claims the ALJ insisted "that Dr. Self should have 'observed [Jones's] pain,'" and argues this is error because pain is unobservable.  (Pl. Br., 24).  Plaintiff's argument misunderstands both Dr. Self's treatment notes and the ALJ's decision.  Dr. Self's treatment notes reveal that plaintiff brought a "functional report" at one visit for Dr. Self to complete.  (R. 311).  Dr. Self noted, "he knows I can't answer most of it," and instructed plaintiff "to fill out his functionality report with a #2 pencil for me to review with him at the [next] visit."  (R. 311).  The notes of the next visit reveal that plaintiff and his sister had completed the form as

they believed to be accurate.  (R. 310).  Dr. Self discussed the
form:

> There are several discrepancies I felt that on his self
> reported functional capacity, some of them were rated
> misunderstandings.  One example was 8 hr work day as
> far as him standing for at one time, he put less than
> an hour but he put less than one hour for the eight
> hour day and that was not accurate so we changed that
> to three hours which probably is accurate.  I explained
> to him that there is no objective findings at all of
> his pain in his arms, legs or back.  We did have films
> of his L spine that were reviewed showing just a little
> L4 - L5 degenerative changes and nothing really
> significant.  Side effect wise we clarified that
> related to itching.

(R. 310).  Later in the same note, Dr. Self stated, "Again he has

no signs of being in pain.  He has never had any difficulty

walking in or out of the room or sitting or standing.  He was

able to drive his car here today."  (R. 310).

It was these notes to which the ALJ cited when discussing

Dr. Self's consideration of pain.  In summarizing the evidence,

the ALJ noted that Dr. Self reported no objective findings

regarding pain.  (R. 21).  In evaluating plaintiff's credibility,

the ALJ noted Dr. Self's comment that plaintiff's pain was not

observable.  (R. 23).  Finally, when evaluating Dr. Self's

opinion, the ALJ noted the physician's comments regarding pain.

(R. 24-25).  As this discussion shows, the ALJ did not require

that plaintiff's pain be observable.  Rather, he properly noted

the reservations expressed by the treating physician regarding

plaintiff's reports of disabling pain.  The court finds no error in the ALJ's evaluation of Dr. Self's opinion.

### 2.   Dr. Anderson's Opinions

The ALJ gave substantial weight to the opinion Dr. Anderson expressed in the psychologist's mental status evaluation, but not to the opinion expressed in his mental RFC assessment form.  (R. 25).  He discounted the mental RFC assessment because Dr. Anderson had only two visits with plaintiff, not an extended treating relationship, because Dr. Anderson's treatment notes do not reveal the extreme limitations found on the mental RFC assessment, because the marked and extreme limitations found in the mental RFC assessment are inconsistent with the GAF[3] score of 55 found on the mental status evaluation, because the record reveals plaintiff gave misleading information to the

---

[3]A GAF (Global Assessment of Functioning) score represents "the clinician's judgment of the individual's overall level of functioning."  Am. Psychiatric Ass'n, <u>Diagnostic and Statistical Manual of Mental Disorders</u> (DSM-IV) 30 (4th ed. 1994).  The GAF Scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death).  <u>Id.</u> at 32.  GAF is an objective classification system providing evidence of a degree of mental impairment.  <u>Birnell v. Apfel</u>, 45 F. Supp. 2d 826, 835-36 (D. Kan. 1999) (citing <u>Schmidt v. Callahan</u>, 995 F. Supp. 869, 886, n.13 (N.D. Ill. 1998)).  A GAF score of 55 falls in the range (51-60) defined as, **"Moderate symptoms . . . OR moderate difficulty in social, occupational, or school functioning** (e.g. few friends, conflicts with peers or co-workers)."  DSM-IV at 32 (emphasis in original).

psychologist, and because the RFC assessment is inconsistent with the opinions expressed in the mental status evaluation. (R. 25).

As with his argument regarding Dr. Self's opinion, plaintiff claims the ALJ picked and chose portions of Dr. Anderson's treating source opinions. The Commissioner argues that the ALJ properly found that Dr. Anderson was not a treating source and properly weighed the psychologist's opinions, and that substantial evidence supports the evaluation.

As the Commissioner argues, the ALJ properly found Dr. Anderson is not a treating physician within the meaning of the regulations. Plaintiff asserts he "began regular mental health treatments [with Dr. Anderson] on Feb 13, 2004," and that Dr. Anderson prepared his mental RFC assessment after treating plaintiff for over six weeks. (Pl. Br., 22-23). Despite plaintiff's assertion that Dr. Anderson had been treating plaintiff for over six weeks when he prepared his mental RFC assessment, the record supports the ALJ's finding that Dr. Anderson saw plaintiff once about ten days after the mental status evaluation performed for the Commissioner. (R. 25). The record contains Dr. Anderson's report of his mental status evaluation performed on Feb. 5, 2004 (R. 259-65) and the mental RFC assessment prepared by Dr. Anderson on Mar. 29, 2004. (R. 299-301). In the mental RFC assessment Dr. Anderson stated that he had treated plaintiff for depression since performing the

mental status evaluation on Feb. 5, 2004.  (R. 300).  The record contains an "Intake Assessment" completed by Dr. Anderson on Feb. 13, 2004, but no records of any other treatment by Dr. Anderson. (R. 321-23).  This record is insufficient to establish the depth of treatment relationship or continuity of care necessary to qualify Dr. Anderson as a "treating physician" within the meaning of the regulations and case law.  It was not error to evaluate Dr. Anderson's opinions as the opinions of an examining physician.

Regarding whether the ALJ picked and chose portions of the medical opinions to support his findings and ignored other portions of the opinions, the court will not repeat the analysis it presented with relation to Dr. Self.  Suffice it to say the analysis applies equally to the opinions of Dr. Anderson as to the opinions of Dr. Self.  The ALJ explained how he had weighed Dr. Anderson's opinions and stated reasons based upon the evidence of record for assigning that weight.  (R. 25). Plaintiff points to no specific evidence or opinion the ALJ ignored and does not argue that the specific reasons given are not supported by substantial evidence in the record.  The court finds no error in the ALJ's evaluation of Dr. Anderson's opinions.

### 3.    The State Agency Medical Consultants' Opinions

The ALJ also discussed and considered the opinions of the
state agency medical consultants, and explained the weight given
and the reasons for the weight given those opinions.  (R. 26).
He adopted the mental RFC assessment provided by the state agency
medical consultants, and explained that he did so because it was
"based upon the totality of the evidence and the findings and
opinions of Dr. Anderson expressed at the time of the initial
[mental status] evaluation."  (R. 26)(citing Ex. 10F).

Plaintiff argues that the ALJ's evaluation of the state
agency medical consultants' opinions is "self contradictory on
its face" in that the ALJ both discredited the opinions because
the consultants did not have the benefit of later evidence, and
adopted the consultants' mental RFC because it is based upon the
totality of the evidence.  (Pl. Br., 25).  Plaintiff argues that
if the opinion did not have the benefit of the later evidence, it
cannot be based upon the totality of the evidence.  Plaintiff's
argument seems to misunderstand the ALJ's decision.  The ALJ
discussed the consultants' opinions:

> The State agency medical consultants who reviewed the
> evidence at the initial and reconsideration stages of
> adjudication determined that the claimant was capable
> of a full range of work at the light exertional level
> (exhibit 8F).  The undersigned finds that later
> evidence, including credible aspects of the claimant's
> testimony, shows that the claimant has additional
> limitations in the ability to stand and walk and also
> has additional nonexertional limitations.  However, the
> undersigned has adopted the mental residual functional
> capacity (exhibit 10F) recommended by the State agency
> medical consultants as this is based upon the totality

of the evidence and the findings and opinions of Dr.
Anderson expressed at the time of the initial
evaluation.

(R. 26)(emphasis added).

The discussion quoted above makes clear that the ALJ found
the physical RFC findings of the state agency medical consultants
not supported by later evidence, but that he found the mental RFC
findings supported by the totality of the evidence.  Although the
ALJ found that plaintiff has additional <u>nonexertional</u> limitations
not found by the medical consultants, the fact that he adopted
the consultants' mental RFC reveals that he did not find
additional <u>mental</u> limitations.  Comparison of the ALJ's RFC
findings with the RFC findings expressed by the consultants
reveals the ALJ found plaintiff has additional nonexertional
limitations consisting of no ladder, rope, and scaffold climbing;
only occasional manipulation; and must avoid all exposure to
extreme heat and cold.  <u>Compare</u> (R. 28) <u>with</u> (R. 268-270).  The
mental RFC limitations found by the ALJ, however, are identical
with those found by the medical consultants.  <u>Compare</u> (R. 28)
<u>with</u> (R. 293-94).  Although the consultants' mental RFC was
prepared without the benefit of Dr. Anderson's mental RFC, that
fact is of no significance because the ALJ properly rejected Dr.
Anderson's mental RFC assessment.  The court's review of the
ALJ's evaluation of the medical opinions reveals no errors as
alleged by plaintiff.

**B.   Evaluation of the Credibility of Plaintiff's Allegations of Symptoms**

The Tenth Circuit has explained the analysis for considering subjective testimony regarding symptoms.  Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (dealing specifically with pain).

> A claimant's subjective allegation of pain is not sufficient in itself to establish disability.  Gatson v. Bowen, 838 F.2d 442, 447 (10th Cir. 1988).  Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment, Luna v. Bowen, 834 F.2d 161, 163 (10th Cir. 1987) (citing Frey [v. Bowen], 816 F.2d [508,] 515 [(10th Cir. 1987)]; Nieto v. Heckler, 750 F.2d 59 (10th Cir. 1984)), that could reasonably be expected to produce the alleged disabling pain.  Luna, 834 F.2d at 163; 42 U.S.C. § 423(d)(5)(A).  This court has stated: The framework for the proper analysis of Claimant's evidence of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987).  We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.  Musgrave v. Sullivan, 966 F.2d 1371, 1375-76 (10th Cir. 1992) (citing Luna, 834 F.2d at 163-64).

Thompson, 987 F.2d at 1488.

When the Tenth Circuit decided Luna in 1987 it noted, "Neither the statute, the regulations, nor other agency rulings and instructions clearly describe how much weight a decision maker must give to subjective allegations of pain." Luna, 834 F.2d at 163.  In 1991, however, the Commissioner promulgated regulations explaining how the agency would evaluate symptoms.

-23-

56 Fed. Reg. 57941, Nov. 14, 1991(<u>as amended by</u> 62 Fed. Reg.
38451, Jul. 18, 1997 <u>and codified at</u> 20 C.F.R. §§ 404.1529 and
416.929).  Although in the regulations and in SSR 96-7p the
Commissioner refers to his evaluation of symptoms as a two-step
process, consistently with <u>Luna</u> the regulations provide that when
the evidence establishes (1) a medically determinable impairment,
(2) which could reasonably be expected to produce the symptoms
alleged, (3) the Commissioner will consider "all the available
evidence" to evaluate the intensity and persistence of
plaintiff's symptoms.  20 C.F.R. §§ 404.1529(c)(1),
416.929(c)(1).  As plaintiff's brief implies, SSR 96-7p requires
an ALJ to analyze a claimant's allegations of symptoms in the
same manner as required by <u>Luna</u> and its progeny.  According to
SSR 96-7p, the ALJ must determine whether the claimant has (1) a
medically determinable impairment, (2) which could reasonably be
expected to produce the symptoms alleged and, if so, (3) the
adjudicator must evaluate the credibility of the claimant's
allegations of symptoms "based on a consideration of the entire
case record."  SSR 96-7p, West's Soc. Sec. Reporting Serv.,
Rulings 134-35 (Supp. 2006)(citing, among other authorities, 20
C.F.R. §§ 404.1529, 416.929).

Plaintiff claims the ALJ found that plaintiff has diabetes
mellitus with neuropathy--conditions which could reasonably be
expected to produce pain--but that the ALJ "failed to evaluate

-24-

Jones' subjective complaints according to the legal standard mandated by both 96-7 and <u>Luna v. Bowen</u>." (Pl. Br., 25). The Commissioner did not specifically address this argument in his brief, but he stated, "After performing the credibility analysis, and finding that Plaintiff's subjective complaints were not entirely credible, the ALJ properly formulated Plaintiff's residual functional capacity." (Comm'r Br., 8).

The court agrees with the Commissioner that the ALJ articulated the correct standard for evaluating the credibility of plaintiff's allegations of symptoms, and applied that standard to his evaluation. The ALJ noted that he had considered plaintiff's allegations of symptoms including pain, and cited to 20 C.F.R. §§ 404.1529, 416.929, SSR 96-7p, and <u>Luna</u> for the standard to be applied to his credibility determination. (R. 21). He stated, "Specifically, when pain is asserted the undersigned must determine whether there is sufficient nexus with any objective evidence of a condition that could reasonably cause the pain alleged. Once that connection is found, the undersigned weighs that evidence with all other evidence in determining the credibility of the claimant." <u>Id.</u> This is a correct statement of the law for evaluating the credibility of plaintiff's allegations of symptoms. The court finds no error in the ALJ's statement of the legal standard applicable here.

The ALJ summarized the evidence of record including plaintiff's allegations regarding his symptoms.  (R. 16-22).  He discussed the evidence relevant to his credibility determination, stated reasons based upon his consideration of the evidence, and determined that plaintiff's allegations are not fully credible. (R. 21-23).  The ALJ cited the correct legal standard and applied that standard in making his credibility determination.  Plaintiff does not point the court to any specific error in application of the standard, but merely asserts that the ALJ failed to apply the correct legal standard in evaluating plaintiff's subjective complaints.  The court finds no error in the ALJ's application of the legal standard for determining credibility of allegations of symptoms.

### C.   Consideration of Functional Limitations Caused by Plaintiff's Mental Impairments

Plaintiff claims the ALJ failed to factor the functional restrictions imposed by his mental impairments into the RFC analysis.  He cites to SSR 85-15 showing that a substantial loss of ability to meet the basic mental work-related activities would justify finding disability, that stress is highly individualized and that mental impairments may cause individuals to cease to function effectively when facing work stress, and requiring that limitations caused by mental impairments must be reflected in an ALJ's RFC assessment.  (Pl. Br., 20-21)(citing SSR 85-15). Beyond his arguments in the next separately-numbered section of

-26-

his brief (that the ALJ improperly evaluated the physicians'
opinions and applied the incorrect legal standard to evaluating
plaintiff's credibility), plaintiff does not identify any mental
limitation which the ALJ failed to include in his RFC assessment.
As discussed above, the ALJ properly evaluated the physicians'
opinions and applied the correct legal standard in his
credibility determination.   Therefore, the ALJ was correct in not
including all of plaintiff's alleged limitations and all of the
limitations mentioned by Drs. Self and Anderson in his RFC
assessment.   The ALJ stated the RFC limitations he found,
explained the weight given the various physicians' opinions, and
explained what he accepted from plaintiff's testimony.   He
formulated his RFC assessment based upon his evaluation of the
evidence and properly explained his assessment.   The court finds
no error in the RFC assessment.

## IV.  Alleged Errors in Hypothetical Questioning

Finally, plaintiff claims the hypothetical question
propounded to the vocational expert is erroneous because it did
not include functional limitations established by "Jones's
treating physician."   (Pl. Br., 26-28).   As the court found
above, the ALJ properly assessed plaintiff's mental RFC, and that
assessment is supported by substantial evidence in the record.
Where a hypothetical question expresses the limitations properly
found by the ALJ and is supported by substantial evidence on the

record as a whole, the vocational expert's response thereto is evidence upon which the ALJ may base his findings regarding work available in the economy.  Barnett v. Apfel, 231 F.3d 687, 690 (10th Cir. 2000); Qualls v. Apfel, 206 F.3d 1368, 1373 (10th Cir. 2000); Gay v. Sullivan, 986 F.2d 1336, 1341 (10th Cir. 1993); Jordan v. Heckler, 835 F.2d 1314, 1316 (10th Cir. 1987).  The hypothetical question presented to the vocational expert is consistent with the RFC assessed, and the court finds no error in the hypothetical question.

**IT IS THEREFORE RECOMMENDED** that JUDGMENT be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Copies of this recommendation and report shall be delivered to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy. Failure to timely file objections with the court will be deemed a waiver of appellate review.  Hill v. SmithKline Beecham Corp., 393 F.3d 1111, 1114 (10th Cir. 2004).

Dated this 18th day of July 2007, at Wichita, Kansas.

s/John Thomas Reid
**JOHN THOMAS REID**
**United States Magistrate Judge**